## Case No. 5,151.

FULLER et al. v. YENTZER et al. SAME v. SAME. SAME v. GOODRICH.

[1 Ban. & A. 520;[1] 6 Biss. 203; 7 Chi. Leg. News, 25.]

Circuit Court, N. D. Illinois. Oct., 1874.[2]

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

[2] [Affirmed in 94 U. S. 288, 299.]

S. S. Fisher, C. C. Bonney, and E. B. Barnum, for complainants.

Scates & Whitney, for defendants.

DRUMMOND, Circuit Judge. These three cases were argued upon the motion for a preliminary injunction, and I then declined to issue the injunction. They afterwards went to proofs and were argued upon final hearing, and having given them full consideration, I remain substantially of the same opinion as when the motion for an injunction was argued, having come to the conclusion that the plaintiffs are not entitled to the relief they ask. The cases are by no means free from difficulty, but I will state the reasons why I have come to this conclusion.

I have no doubt of the validity of the two patents under which the plaintiffs claim; the first, the patent of Fuller, issued in 1860, and the other, is called the Rose patent, issued in September, 1863, and re-issued in December, 1868, and of which Fuller is the assignee. The original patent of Fuller, so far as it is material to consider it in connection with the questions involved in this case, was for a device for creasing and tucking cloth by means of a notch and blade. The original device of Fuller was constructed in such a way as to be attached to the bed-plate of the sewing machine, and the special device by which the creasing was performed was operated by means of the needle-bar. The notch might be above or below. The result was, of course, substantially the same, and it could be arranged in front of the needle or behind it, according to the function that it was required to perform.

The first question to be determined is: What is the extent of the invention of Fuller? He did not invent the notch and blade: that was an old device; nor springs: they also were old. All that he invented was the application of the notch and blade, the springs, and the various other parts of the mechanism to the sewing machine. He certainly could not claim the power of the needle-bar in all its various applications.

All that he could·claim, and, I think, all that his patent, properly construed, can be considered to cover, is the particular device which he adapted in its application to the bed-plate of the sewing machine and to the needle-bar. Otherwise we would have to hold that wherever springs or the notch and blade were applied to the needle-bar, or any other old appliance was taken, by which the power of the needle-bar was used in the construction and operation of a creaser, his device would cover it. That, certainly, cannot be the proper construction of his invention. It is only the special mechanism which he has devised, in its application to the needle-bar and the other parts of the sewing machine, by which the result was obtained. The difficulty arises in the application of the invention. It is natural always, where inventors have discovered some special device or mechanism by which a useful result is obtained, and in the progress of the art various modifications are made, or new ones are invented, which produce the same result in greater or less perfection, to attempt to bring all subsequent discoveries within the scope of their device. It is perfectly right, where any device is subsequently used which may be said fairly to come within the principle of the original invention, that the party should be protected. but it would be wrong to stretch an invention beyond the legitimate bounds of the discovery. so as to exclude all other inventions within the same field of operations. For instance, in this case, it would be obviously an unsound doctrine to hold that no one else could take the notch and blade, or springs, in whatsoever form they might be used. and apply them to the bed-plate and to the needle-bar of a sewing machine.

Wherever any other person subsequently takes what may be substantially the same device or the same mechanism, and attempts to apply it to the needle-bar and to a bed-plate of a sewing machine, he may be said

to be within the invention which Fuller first gave to the world.

As I understand the views of the plaintiffs, there is an effort in this case to bring within the scope of Fuller's device what is not legitimately within the true boundaries of that discovery, because we have to adopt substantially that rule in order to sustain the view of plaintiff's counsel, and to say that no one else could take the springs or apply the power of the needle-bar, or attach a form of notch and blade for creasing to the bed-plate without infringing Fuller's device.

So in relation to the Rose patent, of which Fuller is the assignee, and the validity of which, of course, he cannot question, and the value of which is not controverted.

It is admitted that Fuller's invention does not bring within its scope all forms of tuck-creasers when applied to the needle-bar and to the bed-plate of the sewing machine; otherwise Rose's invention must fall. But the ground upon which that can stand is, that it is substantially a different device. In Fuller's mechanism the act of creasing is performed as has been stated, and a model of which is before me. Under the Rose patent, and by the mechanism which he devised for creasing, there is a different arrangement of the various parts. There is no notch and blade as in the Fuller patent, but there are springs. The Rose device is attached to the bed-plate of the sewing machine. It is operated by the power of the needle-bar. There is a spring attached to a staff, and another, which together form the jaws which pinch the cloth as it passes through the sewing machine. A special contrivance presses the upper spring, brings the jaws together and the movement of the needle-bar down places the jaws upon the cloth which passes between them and an attachment of the bed-plate. It makes a crease upon the cloth; and it is said to have an advantage over Fuller's device, in that it does not perforate or destroy, or even impair, the texture of the cloth. Now the same principle I think, must be considered applicable to the device of Rose as to that of Fuller, namely: he must be confined to the special mechanism which he has invented and which he attaches to the sewing machine, and by means of which he performs a crease in the cloth, and thus enables the operator to make the tuck.

It will be observed that Rose attached his device to the bed-plate of the sewing machine, and operated it by means of the needle-bar as Fuller had done; and there was nothing in Fuller's to prevent the operation of the Rose device.

Now that being so, it simply become a question, when one uses any particular form of mechanism, whether or not, so far as these two patents are concerned, it comes within either of them. The theory is to bring all other forms of mechanism by which a crease is made and a tuck formed, within these two inventions of Fuller and Rose; and it is said

these have been so far the only two known methods of forming the crease. Everything that is legitimately within them of course, includes the invention of these two patentees; but it cannot be said that because they form the crease by the notch and blade, and by the pincers, that no one else can form a crease by some other device different from that of Fuller or Rose; in other words, that they have patented a result or an effect, and not the particular form of mechanism which they have set forth in their specifications. If this is the true construction of these patents, then we shall not have so much difficulty in determining whether or not the defendants have infringed the two devices invented by Fuller and Rose.

To take the first case. The ground assumed by the plaintiffs is that the tuck creasers manufactured by Yentzer and Scates, infringe the first claim of Fuller.

The first claim of Fuller is: "The forming of one, two or more creases in cloth by means of markers on opposite sides of the cloth, which markers are the notch and blade or the notch and point, one connected with the bed of the machine, and the other operated simultaneously with the vibrations of the needle-bar in a sewing machine."

As I have said the notch and blade are old: the springs are old. It may be true—it is not necessary to controvert it in this case—that Fuller was the first person to apply the notch and blade and the springs to a sewing machine so as to form a crease, but I think that no one can take something old and apply it in a new way or in a new form so as to produce a particular result, and be protected beyond the particular way or form or device, and the application which he has made. Otherwise, as I have already said, any one could take an old device and make a new application of it, and prevent all other persons from taking the same, and making another and different application by which a like result is brought about. The question is whether Yentzer and Scates have done that. Let us look at one form of the Yentzer device and a tucker which they have manufactured. There is the spring and the power of the needle-bar applied to the spring. There is—if you choose to call it so—the notch and blade attached to the bed-plate. But the question is whether the springs and notch and blade are used in the same way as in the Fuller patent. Fuller covers by his own special mechanism anything that is fairly within it. He does not include other and different devices or mechanism by which the same result is reached; and I think there may be fairly said to be a difference—such a difference as does not bring it within the mechanism of Fuller; and so it may be said of other forms of manufacture by Yentzer and Scates.

In the second suit, which is also against Yentzer and Scates, the ground assumed by the plaintiffs is, that the creasers manufac-

tured by them, infringe the 6th claim of the Rose patent, which refers to what is called the "unity of adjustment."

The claim is for "a tuck-creasing mechanism such as described, having its upper and lower parts connected and together adjustable as to its relation to the needle of the sewing machine and operated by the sewing machine substantially as set forth."

If the view of the plaintiff's counsel as to the construction of the Rose patent is correct, then all these various devices would be infringements of that claim. If, in other words, Rose had patented every form of mechanism by which a creaser is attached or adjusted to the sewing machine, and by which unity of adjustment is brought about, then there could be no question but the defendants have all infringed, but I think that the view of the counsel of the extent of this claim is not correct. I think the claim is narrower.

It is insisted on the part of the plaintiffs that this patent cannot be restricted to a unity of adjustment in a tucker of the mechanism such as described in the Rose specifications. I think it is so restricted. Let us see. It is said that in the claim the words are used "a tuck-creasing mechanism" and that it means, therefore any tuck-creasing mechanism. "A tuck-creasing mechanism having its upper and lower parts connected and together adjustable." If that were the claim, and it could stand as the invention of Rose, then it might be the defendants would all infringe: but that is not the claim. It is qualified; it does not mean every kind of tuck-creasing mechanism having its upper and lower parts connected and together adjustable, but any tuck-creasing mechanism substantially such as described, which words are very important and essentially qualify the preceding words. It must therefore mean the kind of mechanism—mechanism such as here described, not any form of mechanism however different it might be, but this particular form of mechanism, or that which is substantially the same.

We cannot strike out material words from the claim itself and enlarge the meaning of the invention, but we must limit it fairly, I admit, within the language of the claim.

The third suit is by Fuller as the assignee of the Rose patent and against Goodrich, and it is alleged that Goodrich infringes the first, second, fifth, sixth and eighth claims in the Rose patent.

There seems to be in forming the claims under the Rose patent a disposition to expand them unnecessarily. For instance, the first and second claims are substantially the same; one, to be sure, speaks of the mechanism by which the crease is formed, and the other of the method of pinching the fabrics by which the crease is formed, but of course they resolve themselves into substantially the same thing. The claim is: "The mechanism substantially as herein described for forming a ridge or ridges on fabrics to be afterwards folded in the line of such ridges."

The second claim is the method of nipping or pinching the fabrics to form ridges or creases thereon, by means of jaws opened and closed at intervals to seize and pinch the fabric when at rest, and then release it as the same is moved along by the feed in the sewing machine. But still it means the method produced or seen in the form of mechanism which is referred to in the first claim, and the only difference, therefore, between the first and second claim is, the one speaks of the device as the mechanism, and the other the method by which that mechanism produces the crease.

The fifth claim is the combination of the creasing device or devices of the tuck-marker with the jointed lever substantially as and for the purposes set forth.

The sixth claim I have already referred to and considered. The eighth claim is the combination of the lever and spring with the tuck-marker, having upper and under parts connected together adjustable as specified, substantially and for the purposes set forth. Now it is claimed on the part of the plaintiffs that this form of device used by Goodrich is an infringement, because it is said it is substantially the device of Rose, and that the crease is formed in substantially the same way, and that the parts are adjustable in the same manner; that is to say, that the mechanism of the parts is the same, because, as I have said, I consider that an indispensable element in the true construction of the Rose patent. I do not so regard it. Limiting the Rose patent to a substantial form of mechanism which he has described and the manner in which it operates and is attached to the bed-plate of the sewing machine and the needle-bar, I think there is a substantial difference, such a difference between these two devices as is within the true construction of the patent law, and to hold otherwise is to leave subsequent inventors within very narrow bounds in the same common field of discovery and would, therefore, be attended with very serious consequences. If in any part of the mechanism of Fuller or of Rose there was some great, novel principle or discovery, which no one else could use without infringing that part, then it might be said that these cases of the defendants were fairly within its operation, but that would bring it within the principle, for example, of Howe's discovery in relation to the operation of the needle, and of Wilson's feeding device. There is something connected with Howe's discovery which no one else can use without our saying at once that, no matter in how different a form we put it, still Howe's invention is there. So in relation to the feeding device of Wilson. No matter how much you may change it or modify it, still it is Wilson's feeding device.

If that principle were applicable to these cases, then I should have no hesitation in holding there was an infringement.

There are two modes of construing the patent law, and it may be said, perhaps, without any disrespect, that there are some judges who adopt one mode and some another. There are those who are inclined to expand, beyond legitimate boundaries, the invention of the patentee. There are others who restrict it within narrower bounds, holding that the invention of the patentee must be limited by the particular mechanism and the application by which the result is attained, thus leaving the field of discovery open to all persons to explore it beyond the range of that particular mechanism and its application. I confess the latter seems to me the more correct rule and therefore hold that parties should be limited rather closely within the claims of their patents and the description of the particular mechanism, and the application which they have made by which the result is produced. Of course a change of form will not change the principle. And I do not dispute the rule that the invention is to be construed liberally.

A mechanical change does not prevent an infringement. In looking at Goodrich's device as I have said, it seems to me to be essentially different from the Rose patent, and therefore I hold that in that case, as in the others, there is no infringement. In these cases all the defendants, or Yentzer and Goodrich under whom these defendants are manufacturing, claim to be protected by patents duly issued. Of course if those patents are for something which has been previously discovered and patented to other parties, the patent is no protection, but it is at least evidence of the view which the patent office has taken of the rights of the defendants.

The application for the injunction is therefore refused and the bills dismissed.